UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-704(DSD/JJK)

Alberto Perez, Jr., through his
parent/legal guardian Alberto
Perez, Sr.

      Plaintiffs,

v.                                                      **ORDER**

City of St. Paul, Minnesota,
St. Paul Police Officers
John Gregory Corcoran, Erik. M.
Johnson and Anthony M. Reginek,
in their official and individual
capacities,

      Defendants.


    Jill Clark, Jill Clark P.A., 2005 Aquila Avenue North,
    Golden Valley, MN 55427, counsel for plaintiffs.

    Portia M. Hampton-Flowers, St. Paul City Attorney, 15
    West Kellogg Boulevard, Suite 750, St. Paul, MN 55102,
    counsel for defendants.


    This matter is before the court upon the motion for summary

judgment by defendants City of St. Paul and St. Paul police

officers John Gregory Corcoran, Erik M. Johnson and Anthony M.

Reginek (officers).  Based on a review of the file, record and

proceedings herein, and for the following reasons, the court grants

the motion in part.


**BACKGROUND**

    This excessive-force dispute arises out of a 911 call from 119

Front Avenue in St. Paul shortly before 9:00 p.m. on September 30,

2006.   Corcoran, Johnson and Reginek responded to the call. Plaintiff Alberto Perez Jr. (Perez), who is developmentally disabled, lives at 113 Front Avenue, adjacent to 119 Front Avenue. See Perez, Sr. Decl. ¶ 1, ECF No. 43.  Perez has an IQ of 45 and "fine and gross motor skills adequate to meet his needs." Id. Ex. 1, at 1.   Although he "follows oral directions well," he can be difficult to understand.[1]  Id. at 2.  He "has a history of leaving his family's home without letting anyone know where he is going." Id.  The parties dispute the events that led to the interaction between Perez and the officers.

According to defendants, Johnson and Reginek approached the front door of 119 Front Avenue and Corcoran walked along the driveway between 119 and 113 Front Avenue.  Corcoran Aff. ¶¶ 5-6. Corcoran saw Perez exit the back door of 119 Front Avenue and walk to the backyard of 113 Front Avenue.  Id. ¶ 7.  Corcoran yelled "Police, Come Here" and Perez put his hand in his shirt or pocket near his waistline.  Id. ¶ 9.  Corcoran then directed Perez several times to let him see his hands.  Id. ¶ 10-12.  Perez did not comply and started walking towards Corcoran.  Id.  Corcoran drew his gun and repeated his command; Perez did not comply and continued to walk towards Corcoran.  Id. ¶ 12.  Corcoran commanded Perez to "get on the ground," and Perez did not comply.  Id. ¶ 13.  Corcoran then

---

[1] According to his father, Perez is confused when new people speak to him and does not understand what they are saying.  See Perez, Sr. Decl. ¶ 1.

2

kicked Perez in the stomach or chest to create space between them, and Perez fell to the ground.  Id. ¶ 15.  Corcoran placed his foot or knee on Perez's back to restrain him, and Reginek helped place Perez in handcuffs.  Id. ¶¶ 16-18.  By this time, people had gathered and were yelling at the officers.  Id. ¶ 17.  Corcoran stood Perez up and searched him.  Id. ¶ 19.  Corcoran learned that Perez was developmentally disabled.  Id. ¶ 20.  Thereafter, Corcoran took Perez to his house, and explained the incident to his father, Alberto Perez, Sr.  Id. ¶¶ 22-23.

According to Perez, two police officers approached him in the driveway between 113 and 119 Front Avenue.  It appears that Perez denies being inside the house at 119 Front Avenue.  See Carlos Garcia Decl. ¶¶ 3, 10 ("Police came through the alley.  [Perez] was in the alley .... He was on his property."); see also Dorothea Garcia Decl., Hudson Decl., Mack Decl. ¶ 9 ("[The police officers] said 'we were chasing someone and he was the one in the back yard so we got onto him.'"), Perez, Sr. Decl. ¶ 3.  Perez was holding a SuperAmerica cup.  See Carlos Garcia Decl. ¶ 2; Hudson Decl. ¶ 3.  The police officers said "where the gun," "get down" and "get on the ground" to Perez.  Carlos Garcia Decl. ¶ 3; Hudson Decl. ¶ 8; Mack Decl. ¶ 4.  Perez remained standing.  Am. Compl. ¶ 6.  The police officers walked up to Perez, kicked him in the chest and "threw him to the ground."  Hudson Decl. ¶ 2; see Carlos Garcia Decl. ¶ 3; Mack Decl. ¶ 5-6.  An officer continued to point his gun

at Perez while they handcuffed him.  See Carlos Garcia Decl. ¶ 4.

When Perez turned his head, one police officer pushed him back down

with his foot on Perez's back.  See id.; Dorotha Garcia Decl.

¶¶ 5-6.   Neighbors told the police officers that Perez is

"handicapped," "disabled" and "retarded." Carlos Garcia Decl. ¶ 4;

Dorotha Garcia Decl. ¶ 8.  Police officers kept Perez on the ground

for approximately fifteen minutes, and let him up when his father

came outside.  Carlos Garcia Decl. ¶ 17; Dorotha Garcia Decl. ¶ 12.

Perez alleges that he suffers ongoing emotional distress as a

result of the incident.  Perez, Sr. Decl. ¶ 2.

On March 26, 2009,[2] Perez filed this action under 42 U.S.C.

§ 1983, claiming that defendants violated his rights to due process

and equal protection and used excessive force.  Defendants moved

for summary judgment.  The court now considers the motion.[3]


## DISCUSSION

Summary judgment is appropriate "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ.

---

[2] Perez amended his complaint on June 23, 2009.

[3] Perez offers no evidence or argument in opposition to
defendants' motion for summary judgment on his due process and
equal protection claims.  Therefore, the court grants summary
judgement on those claims.

P. 56(c);[4] see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material only when its resolution affects the outcome of

the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).   A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party.   See

id. at 252.

On a motion for summary judgment, the court views all evidence

and inferences in a light most favorable to the nonmoving party.

See id. at 255.   The nonmoving party, however, may not rest upon

mere denials or allegations in the pleadings but must set forth

specific facts sufficient to raise a genuine issue for trial.   See

Celotex, 477 U.S. at 324.   Moreover, if a plaintiff cannot support

each essential element of his claim, the court must grant summary

judgment because a complete failure of proof regarding an essential

element necessarily renders all other facts immaterial.   Id. at

322-23.

Section 1983 provides in relevant part:

> Every person who, under the color of any
> statute, ordinance, regulation, custom, or
> usage, of any State ... subjects, or causes to
> be subjected, any citizen of the United States
> ... to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law.

---

[4] The court cites the Federal Rules of Civil Procedure in
effect at the time of the motion.   Changes effective December 1,
2010, do not affect the outcome of this case.

Section 1983 is "'not itself a source of substantive rights'" but merely affords "'a method for vindicating federal rights elsewhere conferred.'" <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a court considering a § 1983 claim must first "identify the specific constitutional right allegedly infringed." <u>Id.</u> at 271 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989)). Moreover, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." <u>Mayorga v. Missouri</u>, 442 F.3d 1128, 1132 (8th Cir. 2006) (quotation omitted).

## I.   Individual-Capacity Liability

Perez claims that Corcoran, Reginek and Johnson violated his Fourth Amendment right to be free from excessive use of force. The officers argue that they are entitled to qualified immunity because the undisputed facts do not support Perez's claims that defendants violated his constitutional rights.

Qualified immunity protects government agents who perform discretionary functions from civil liability, so long as the challenged actions are objectively reasonable in light of clearly established legal principles. See <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987). Qualified immunity is a question of law that the court determines "at the earliest possible stage in litigation" to shield appropriate officials from suit. <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009). "An official is entitled to qualified

immunity against a § 1983 action unless (1) the facts, construed in the light most favorable to the party seeking damages, establish a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation." McKenney v. Harrison, 635 F.3d 354, 358 (8th Cir. 2011) (citing Pearson, 129 S. Ct. at 815-16).  The court applies the doctrine of qualified immunity in a manner that "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

An officer violates the Fourth Amendment when he uses excessive force in the apprehension or detention of a person. See Graham, 490 U.S. at 395.  "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citations omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  The "calculus of reasonableness must embody allowance for the fact that

police officers are often forced to make split-second judgments –
in circumstances that are tense, uncertain, and rapidly evolving –
about the amount of force that is necessary in a particular
situation."   Id. at 396-97; see Brown, 547 F.3d at 496.   "[T]he
right to make an arrest or investigatory stop necessarily carries
with it the right to use some degree of physical coercion or threat
thereof to effect it."   Cook v. City of Bella Villa, 582 F.3d 840,
849 (8th Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 396
(1989)).   "Not every push or shove, even if it may later seem
unnecessary in the peace of a judge's chambers, violates the Fourth
Amendment."   Id.

     When evaluating an officer's use of force, a court considers
the totality of the circumstances and pays "careful attention to
the facts and circumstances of [the] particular case, including the
severity of the crime at issue, whether the suspect poses an
immediate threat to the safety of the officers or others, and
whether [s]he is actively resisting arrest or attempting to evade
arrest by flight."   Graham, 490 U.S. at 396.   To establish a claim
of excessive force, a plaintiff must show actual injury, which is
more than de minimis, but less than significant.   See Crumley v.
City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003); Dawkins v.
Graham, 50 F.3d 532, 535 (8th Cir. 1995).   More than minor injury

resulting from the application of handcuffs is required to support an excessive force claim.  Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005) (citing Crumley, 324 F.3d at 1008).

Viewing the facts and inferences in the light most favorable to Perez, disputed material facts prevent disposition of the qualified immunity claim and preclude summary judgment.  First, determination of whether the initial encounter between police and Perez was reasonable under the circumstances depends on whether police had reasonable suspicion that Perez was involved in criminal activity.  Perez argues that he did not exit 119 Front Avenue, but rather was standing in his backyard.  In the context of responding to a 911 call, seeing Perez exit the residence would provide reasonable suspicion to stop him; however, if Perez were merely standing in his yard observing, the facts would not provide a basis for reasonable suspicion.  In addition, the parties dispute whether Perez walked toward the officers or the officers instead advanced on Perez.  Compare Corcoran Aff. ¶¶ 11, 13, with Hudson Aff. ¶ 2. They also dispute the amount of lighting in the yard, and therefore how much the officers could see.  Compare Corcoran Aff. ¶ 9, with Hudson Aff. ¶ 4.  As a result, a question remains about whether the initial contact was reasonable.[5]

---

[5] Accepting Perez's version of the facts, the officers' actions were objectively reasonable once they initiated contact with Perez.  They ordered Perez to show his hands.  He did not comply, and although he had a cup in one hand, the officers could
(continued...)

Moreover, a dispute remains about the events after the officers restrained Perez and learned that he was developmentally disabled.  According to the officers, they quickly brought him to his feet, and then took him home.  According to Perez, the officers forced him to lie on the ground for 15 minutes until his father came outside.  Viewing the facts and inferences in the light most favorable to Perez, the court cannot determine whether continued use of force was objectively reasonable.  Therefore, summary judgment is not warranted on the excessive force claim.

## II.  Municipal Liability

Municipalities are not vicariously liable under § 1983 for an employee's unconstitutional acts.  Szballa v. City of Brooklyn Park, 486 F.3d 385, 389 (8th Cir. 2007) (en banc) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  Rather, municipal liability exists only if a plaintiff can establish that (1) "a particular municipal policy or custom itself violates federal law,

---

[5](...continued)
not see his other hand.  In the context of an uncertain and potentially unstable situation, the failure to comply with directions raises significant safety concerns for both the officers and the public.  A reasonable officer in this situation would believe that Perez might have a weapon.  His developmental disability does not diminish the reasonable concern that he might pose a danger to officer and public safety.  See Hassan v. City of Minneapolis, Minn., 489 F.3d 914, 919 (8th Cir. 2007).  The physical force used to gain control of Perez was a reasonable response to his failure to comply.  Once Perez was restrained in handcuffs, pressure on his back or neck in response to his movements is also a reasonable response.  Police officers have a duty to gain and maintain control of a situation, and the manner in which the officers did so here is well within the bounds of reason.

or directs an employee to do so" or (2) "where a facially lawful municipal policy or custom was adopted with deliberate indifference to its known or obvious consequences. Moyle v. Anderson, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation and internal quotation marks omitted). To establish deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Jennings v. Wentzville R-IV Sch. Dist., 397 F.3d 1118, 1122 (8th Cir. 2005) (citation omitted). Notice is implied if "the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious." Id.

Perez argues that St. Paul has "a policy or custom of abusing the developmentally disabled" by "not taking into account the disability in interacting with these citizens" or that it "failed sufficiently to train police personnel about how best to interact with developmentally disabled citizens." Am. Compl. ¶ 11.

Even if the individual officers violated the constitutional rights of Perez, he does not identify any particular policy or custom that facially or indifferently caused violation of the law. Instead, Perez argues that the lack of a policy regarding developmentally disabled persons causes Fourth Amendment violations. In general, a single violation of a constitutional right does not support a finding of municipal liability. See Szballa, 486 F.3d at 393. There is no evidence that St. Paul has

11

a history of unconstitutional arrests or use of force on developmentally disabled individuals, such that the need for additional specific training was plain. Id. at 392. In short, there is no evidence of any St. Paul policy — or lack of policy — that causes officers to violate the constitutional rights of developmentally disabled individuals.

Further, the record demonstrates that St. Paul had policies for transporting persons with mental and physical disabilities and for interacting with emotionally disturbed persons, which included those considered "retarded." Hampton-Flowers Aff. Ex. F; accord Anthony v. City of New York, 339 F.3d 129, 140 (2d Cir. 2003) (training police officers in interaction with "emotionally disturbed persons" precluded Monell claim by person with Down syndrome). St. Paul also trains officers in "Tactical Communication: Human Relations and Problem Solving for Law Enforcement" and "Verbal Judo." Hampton-Flowers Aff. Exs. H-1, H-2. These training sessions addressed barriers to communication, including the inability of the receiver to decode or process what the officer is saying. See id. Such training undermines Perez's municipal-liability claim.

Lastly, Perez argues that officers should recognize developmentally disabled persons based on "the visual look of developmentally disabled like Alberto Jr." Pl.'s Mem. Opp'n 22. Developmental disabilities, however, constitute a wide variety of

disabilities "attributable to a mental or physical impairment or combination of mental and physical impairments."   42 U.S.C. § 15002.   Common to those disabilities — and relevant here — are a variety of mental and physical barriers to effective communication. Effective communication with a broad range of persons is precisely the type of training that St. Paul provides.   Therefore, the claim fails, and summary judgment is warranted in favor of St. Paul.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF 31] is granted in part:

1.   The motion is denied as to the excessive-force claim against Corcoran, Johnson and Reginek;

2.   The motion is granted as to all parties for the due process and equal protection claims; and

3.   The motion is granted as to the municipal-liability claim against St. Paul.

Dated:  May 19, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court
